

FILED
RICHARD W. NAGEL
CLERK OF COURT

2015 JUN 10 PM 3: 27

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

UNITED STATES OF AMERICA

vs.

KAREN L. FINLEY

CASE NO. 2:15cR 148

JUDGE SMITH

18 U.S.C. § 371

### INFORMATION

**THE UNITED STATES ATTORNEY CHARGES:**

### INTRODUCTORY ALLEGATIONS

1.    The defendant, KAREN L. FINLEY ("FINLEY"), was the President and Chief Executive Officer of COMPANY A from in or about December 2005 to in or about February 2013.

2.    COMPANY A was a Delaware corporation with its headquarters located in Phoenix, Arizona.   COMPANY A's reported business focus was to enhance public safety through the use of technologies, such as red-light and speed photo enforcement solutions.   Among other things, COMPANY A operated photo enforcement systems in numerous cities in the United States and Canada, including several cities in the State of Ohio.

3.    EXECUTIVE A was the Executive Vice President, Sales of COMPANY A.

4.    CONSULTANT A was a consultant and lobbyist based in Columbus, Ohio.   From in or about 2005 through in or about 2013, FINLEY, EXECUTIVE A, and COMPANY A worked

with CONSULTANT A in connection with business that COMPANY A was seeking to obtain and retain with municipalities in Ohio, including Columbus and Cincinnati.

5. In each of the calendar years 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012 and 2013, the City of Columbus, Ohio received in excess of $10,000 from the United States government under Federal programs involving grants, subsidies, loans, guarantees, insurance, and/or other forms of assistance.

6. In each of the calendar years of 2005, 2006, 2007, and 2008 the City of Cincinnati, Ohio received in excess of $10,000 from the United States government under Federal programs involving grants, subsidies, loans, guarantees, insurance, and/or other forms of assistance.

## COUNT ONE

### CONSPIRACY TO COMMIT BRIBERY CONCERNING PROGRAMS RECEIVING FEDERAL FUNDS AND HONEST SERVICES WIRE AND MAIL FRAUD
### (18 U.S.C. § 371)

7. The introductory allegations set forth in paragraphs 1 through 6 are realleged and incorporated by reference as though fully set forth herein.

### The Conspiracy

8. Beginning no later than the year 2005, and continuing through in or about February 2013, in the Southern District of Ohio, Eastern and Western Divisions, and elsewhere, the defendant, KAREN L. FINLEY, together with others known and unknown, did knowingly and unlawfully conspire, confederate, and agree together and with each other:

> a. to corruptly give, offer, and agree to give, something of value to officials of the City of Columbus, who were agents of the government of the City of Columbus, with the intent to influence and reward those agents in

2

connection with a business, transaction, and series of transactions of $5,000 or more of the City of Columbus, in violation of Title 18, United States Code, Section 666(a)(2);

b.　　to corruptly give, offer, and agree to give, something of value to an official of the City of Cincinnati, who was an agent of the government of the City of Cincinnati, with the intent to influence and reward the agent in connection with a business, transaction, and series of transactions of $5,000 or more of the City of Cincinnati, in violation of Title 18, United States Code, Section 666(a)(2);

c.　　to devise and intend to devise a scheme and artifice to defraud and deprive the citizens of the City of Columbus and the City of Cincinnati of their right to the honest and faithful services of the elected officials of the City of Columbus and the City of Cincinnati, through bribery and the concealment of material information, in violation of Title 18, United States Code, Sections 1341, 1343, and 1346.

### Objects of the Conspiracy

9.　　It was an object of the conspiracy for FINLEY, EXECUTIVE A, and others to enrich themselves and COMPANY A and advance COMPANY A's business interests by providing campaign contributions to elected public officials in the City of Columbus and the City of Cincinnati in exchange for each elected public official agreeing to take, and thereafter taking, official acts to benefit FINLEY, EXECUTIVE A, COMPANY A, and others.

3

10.     It was an object of the conspiracy to conceal and disguise the true nature and source of the campaign contributions that FINLEY, EXECUTIVE A, COMPANY A, and others provided to elected public officials in the City of Columbus and the City of Cincinnati through CONSULTANT A.

### Manner and Means

11.     The conspiracy was carried out through the following manner and means, among others:

a.     FINLEY, EXECUTIVE A, and others provided and agreed to provide campaign contributions to elected public officials in the City of Columbus and the City of Cincinnati, in return for the elected public officials agreeing to take, and actually taking, official acts on behalf of COMPANY A to obtain and retain municipal contracts.

b.     The elected public officials received and attempted to receive COMPANY A's campaign contributions by soliciting CONSULTANT A, who then conveyed these solicitations to FINLEY, EXECUTIVE A, and COMPANY A.   The public officials used CONSULTANT A to apply pressure to COMPANY A concerning the solicitations for campaign contributions. The solicitations from the public officials typically occurred during periods of time when COMPANY A was seeking to obtain and retain municipal contracts.

c.     FINLEY, EXECUTIVE A, and others also concealed their activity by using CONSULTANT A to funnel conduit or pass-through campaign

4

contributions from COMPANY A to the elected public officials. After CONSULTANT A conveyed the campaign contribution requests to EXECUTIVE A, FINLEY and EXECUTIVE A coordinated the payments by COMPANY A to CONSULTANT A. The payments by COMPANY A to CONSULTANT A were often made pursuant to an invoice for "consulting services" or a Memorandum of Understanding for a "success fee." The transmission and/or communication of the payments and invoices occurred through the use of the U.S. Mail and interstate wire communications.

d.  In return for campaign contributions that the elected public officials received and attempted to receive, the elected public officials agreed to perform, attempted to perform, and actually performed official acts that benefitted FINLEY, EXECUTIVE A, and COMPANY A, including but not limited to the following: (1) obtaining a photo red light enforcement contract with the City of Columbus in or about 2005; (2) extending the contract in or about 2009; (3) modifying, extending, and expanding the contract in or about 2010; and (4) attempting to obtain a photo red light enforcement contract with the City of Cincinnati between 2005 and 2008.

### Overt Acts

12. In furtherance of the conspiracy, and to effect its objects and purposes, KAREN L. FINLEY, and others, committed the following overt acts, among others, in the Southern District of Ohio, Eastern and Western Divisions, and elsewhere:

a. On or about September 24, 2007, CONSULTANT A sent an e-mail to EXECUTIVE A, conveying contribution requests, totaling $30,000, for the campaigns of certain officials in the City of Columbus and the City of Cincinnati.   CONSULTANT A explained to EXECUTIVE A how each elected official was "supportive" and "necessary" in Columbus or "leading the charge in Cincinnati."

b. On or about October 9, 2007, EXECUTIVE A (copying FINLEY and other employees of COMPANY A) sent an e-mail to CONSULTANT A, expressing concern about the $30,000 amount and asking, "What is the minimum you would recommend, that would still get us recognition and keep you (and us) in good graces?"

c. On or about October 9, 2007, during an internal discussion of the $30,000 amount, FINLEY sent an e-mail to EXECUTIVE A and another COMPANY A employee stating, in part:   "WOW that is a big handout.  Is this how our local city handles campaign financing - now I understand the 'order of protection' for our friends".

d. On or about October 12, 2007, CONSULTANT A provided an invoice to COMPANY A for $30,000 for "Consulting Services."   The invoice was sent to FINLEY's attention.   With FINLEY's approval, COMPANY A paid the invoice on or about the same day.   FINLEY knew at the time of her approval that the payment was not for consulting services rendered by CONSULTANT A; instead, CONSULTANT A would use the proceeds to

6

make contributions to the campaigns of public officials in the City of Columbus and the City of Cincinnati.

e.   Between on or about October 17, 2007, and on or about November 23, 2007, CONSULTANT A made campaign contributions in CONSULTANT A's own name.   CONSULTANT A also purchased official bank checks and listed the names of third parties as the remitters.   These official bank checks were reported as campaign contributions from the third parties, as opposed to campaign contributions from CONSULTANT A.

f.   In or around mid-October 2009, CONSULTANT A sent EXECUTIVE A an invoice (dated October 12, 2009) for $5,000.   When CONSULTANT A had not received the payment by October 21, 2009, CONSULTANT A had the following e-mail exchange with EXECUTIVE A:

**CONSULTANT A:**   **Need to know if or when the package has been sent.   they are all over me.   Less than two weeks out.   Please advise**

**EXECUTIVE A:**   **I am working on it - It is not easy to ask for these out of cycle.   I have been obliged historically, but governance is hammering me.   Working on it. . . .   Please hang in there.**

**CONSULTANT A:**   **I need a timeline to tell them.   Time is running out for them.**

**EXECUTIVE A:**   **What is the absolute deadline?   This is more critical.**

**CONSULTANT A:**   **As I told you earlier they are less than two weeks out.   Anything after this will be a major problem at this end**

**EXECUTIVE A:**   **I will keep trying.   It aint easy, you know I have been back to that well many, many times over the years. . . .   I will remain confident.**

**CONSULTANT A:**   **If you can't get it here this week I will have to take [COMPANY A] off the list and then I will lose control of any timelines**

7

g.     On or about October 22, 2009, EXECUTIVE A forwarded CONSULTANT A's request to FINLEY for payment.  FINLEY urgently requested a check from COMPANY A's finance department.

h.     On or about October 22, 2009, COMPANY A paid CONSULTANT A $5,000, with EXECUTIVE A sending an e-mail to CONSULTANT A stating:  "The check is going out in FedEx today.  All good?" CONSULTANT A sent an e-mail replying, "I'm here w/[elected public official in Columbus].  [Elected public official in Columbus] says THANKS.  Will call later[.]"

i.     On or about October 23, 2009, CONSULTANT A made a $5,000 contribution to the Franklin County Democratic Party in his own name.

j.     On or about September 21, 2011, EXECUTIVE A received an e-mail from the campaign of an official in the City of Columbus, discussing a possible $20,000 contribution.  The e-mail, sent from a campaign representative, references a prior conversation the same date between EXECUTIVE A and the elected public official.

k.     On or about October 6, 2011, CONSULTANT A provided a $20,000 invoice to COMPANY A for a "success fee" concerning an extension of the City of Columbus's photo red light program.  CONSULTANT A also provided a $20,000 invoice to COMPANY A.

l.     On or about October 6, 2011, FINLEY signed a "Memorandum of Understanding" to pay a "success fee" to CONSULTANT A.  At the time

8

she executed the Memorandum of Understanding, FINLEY knew the payment to CONSULTANT A was not a success fee; instead, CONSULTANT A would use the proceeds to make campaign contributions in the City of Columbus.

m.     On or about October 14, 2011, COMPANY A provided CONSULTANT A with a $20,000 payment.

n.     On or about October 19, 2011, CONSULTANT A deposited the $20,000 check from COMPANY A and purchased an official bank check in the amount of $20,000.

o.     On or about October 21, 2011, CONSULTANT A contributed $20,000 to the Ohio Democratic Party in his own name.

p.     On or about November 1, 2011, the Ohio Democratic Party made a $21,000 contribution to the campaign of the elected official that had contacted EXECUTIVE A.

All in violation of 18 U.S.C. § 371.

CARTER M. STEWART
United States Attorney

BRENDA SHOEMAKER
Financial Crimes Chief
Assistant United States Attorney

9